[Cite as *Whiteside v. Dept. of Rehab. & Corr.*, 2009-Ohio-7056.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

NORMAN V. WHITESIDE

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2005-04691

Judge J. Craig Wright
Magistrate Steven A. Larson

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging multiple claims. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant to this action, plaintiff was an inmate in the custody and control of defendant pursuant to R.C. 5120.16. Plaintiff alleges that upon his transfer from Orient Correctional Institution to Madison Correctional Institution (MaCI) in February 2002, he attempted to establish several inmate organizations, including a branch of the National Association for the Advancement of Colored People (NAACP). He alleges that he was unable to establish, operate or participate in inmate organizations at MaCI because of constant harassment, humiliating shakedowns, and fraud on the part of MaCI staff.

{¶ 3} On September 3, 2004, corrections officers (COs) conducted a "shakedown" of plaintiff's living quarters which revealed that plaintiff had documents belonging to several other inmates commingled with NAACP documents in a locker box dedicated to the NAACP. (Plaintiff's Exhibit 206.) A typewriter belonging to the inmate

NAACP organization was confiscated. Plaintiff was given a ticket for being in possession of the other inmates' documents and the typewriter, all of which were considered contraband. Plaintiff was scheduled for a hearing before the Rules Infraction Board to determine whether the items he possessed were in fact contraband. Prior to the hearing, the items were sent to the contraband vault. (Plaintiff's Exhibit 206.) Plaintiff asserts that he had permission to have the documents and typewriter because he was working on a class action lawsuit involving inmates. He alleged that the shakedown and confiscation of the typewriter was evidence of a continuing course of harassment by MaCI staff.

{¶ 4} Corrections Captain David Caughman testified that, on September 3, 2004, while he investigated the facts related to the complaint, plaintiff claimed that the typewriter's ribbon was damaged by CO Sollars. Additionally, Caughman discovered that plaintiff may have lied to staff and collaborated with other inmates in an attempt to influence the outcome of the upcoming disciplinary proceedings. As a result, Caughman filed a "Report of Security Control" citing plaintiff for violations of Rule 27: "Giving false information or lying," and Rule 60: "Aiding another to commit any of the above acts." (Plaintiff's Exhibit 32.) According to Caughman, plaintiff was placed in Security Control after a disciplinary hearing on all of the foregoing issues. On September 19, 2004, when plaintiff went to Security Control, two Inmate Property Records were completed, four hours apart, for the purpose of documenting all of the property that was removed from plaintiff's cell and placed in storage while plaintiff served his time in Security Control. (Plaintiff's Exhibits 201 and 202.)

{¶ 5} After his release from Security Control, plaintiff alleged that a gold pen with a diamond clip that had been given to him by his father was missing.

{¶ 6} Plaintiff's final allegation is that defendant committed fraud by permitting him to participate in the Jaycees organization when defendant was aware that plaintiff's age made him ineligible for membership.

{¶ 7} Plaintiff was 49 years old when he joined the Jaycees, an inmate association where the maximum age for membership is 30. Plaintiff asserted that an unknown inmate misrepresented his birth year on the application and that he was permitted to join the organization despite being ineligible. Plaintiff testified that he held the Jaycees' office of Vice President for one term and the office of President for two terms. When the Jaycees disbanded, their account contained dues previously paid by the members, including a total of $33.50 collected from plaintiff. Plaintiff alleges that defendant, through its staff representative, should have known that he was ineligible and, therefore, should not have allowed him to join the organization.

{¶ 8} Initially, the court is unable to conceive of a legal claim for relief arising from plaintiff's allegations. Moreover, the court finds that even if defendant would have been responsible for plaintiff's initially joining the Jaycees as an ineligible member, defendant is not responsible for plaintiff's continued membership inasmuch as plaintiff knew or should have known that he was ineligible. Surely, serving as Vice President and President for two terms, plaintiff would have been aware of the organization's bylaws and the fact that he was ineligible to be a member, let alone an officer.

{¶ 9} Plaintiff also alleges that the Jaycees' remaining organizational funds, and specifically his dues of $33.50, were not refunded to the inmates, but were instead used to purchase ice cream for "yard day," a non-Jaycees event.

{¶ 10} Diana Mathews, a witness called by plaintiff, testified that she was an employee of defendant and that she was the person who issued purchase orders for MaCI. She was aware that the Jaycees were defunct, but that there was still activity on their account. She explained that the procedure for paying funds from an inmate association account requires the approval of all of the general members. When there is a request to pay out funds, the request must be made by the members and must then be approved by both the advisor for the organization and the deputy warden of operations before an invoice is paid. Plaintiff did not produce any evidence to show that proper procedures were not followed in purchasing the ice cream.

{¶ 11} Furthermore, "A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, 2004-Ohio-28. Inasmuch as plaintiff's sole claim for relief regarding the Jaycees dues is equitable in nature, the Court of Claims Act has no applicability. Id., R.C. 2743.02(A)(1), 2473.03(A). Accordingly, it is recommended that plaintiff's claim based upon the alleged improper removal of dues from the Jaycees account be dismissed for lack of subject matter jurisdiction.

{¶ 12} Finally, plaintiff alleges that he was harassed by staff and was subject to unwarranted shakedowns. He further alleges that property that was in his possession for legitimate purposes, such as helping other inmates with a class action lawsuit was declared contraband. Plaintiff further alleged that the institution's staff prevented him from establishing or participating in inmate organizations.

{¶ 13} The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70. Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547.

{¶ 14} The court finds that defendant's decisions to limit the property that plaintiff was permitted to possess are characterized by a high degree of official judgment or discretion. Therefore, defendant is entitled to discretionary immunity for claims arising from such decisions.

{¶ 15} The court further finds that the confiscated typewriter, by plaintiff's own

admission, belonged to the inmate NAACP organization and plaintiff has no legal basis to substantiate a claim for its return.  Finally, the court finds that there is no evidence to substantiate that plaintiff possessed a gold pen with a diamond clip.  (Exhibits 201 and 202.)

{¶ 16} Based on the foregoing, it is recommended that all of plaintiff's claims be denied and that judgment be rendered in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
STEVEN A. LARSON
Magistrate

cc:

James P. Dinsmore                          Norman V. Whiteside, #184-313
Assistant Attorney General                 Warren Correctional Institution
150 East Gay Street, 18th Floor            P.O. Box 120
Columbus, Ohio 43215-3130                  Lebanon, Ohio 45036

Magistrate Steven A. Larson

SAL/mdw/cmd
Filed December 10, 2009
To S.C. reporter January 5, 2010